IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REGINA S. MAESTAS,

      Plaintiff,

vs.                                                                                   Civ. No. 01-1080 WWD/LFG ACE

WALGREEN DRUG STORE NO. 1820,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, of the Claims of Breach of Implied Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing (Docket # 37) filed June 3, 2002.

**Defendant's Contentions.**

Defendant makes numerous assertions which it categorizes as "undisputed material facts" with supporting references to the complaint herein or Plaintiff's deposition.

According to Defendant, the undisputed facts are as follows:

(1) Plaintiff was employed as a clerk at Walgreen Drug Store No. 1820 from August 21, 1997, until March 31, 2000; and (2) she was similarly employed at Walgreen Drug Store No. 0012 from April 13, 2000, until, according to Plaintiff, she voluntarily abandoned employment on June 19, 2000. (3) During the times material to this action, Albert Chavez was the assistant manager and Robert Torres was the store manager at Walgreens Drug Store No. 1820. (4) Plaintiff was late for work on numerous occasions as documented in her personnel file. (5) Plaintiff received a written warning for her excessive tardiness on April 11, 1998. (6) Plaintiff met with Albert Chavez on September 10, 1999, to discuss her tardiness problem. (7) On November 6, 1999, Plaintiff was suspended by either Robert Torres or Albert Chavez for three days as a result of her continuing tardiness despite verbal and written warnings. (8) Plaintiff admits that she was late for work once again on March 31, 2000, the date of the incident in question. (9) Plaintiff's employment with Walgreens was temporarily suspended until she reported the incident to Robert Torres, the general manager, on April 10, 2000. (10) Plaintiff was unable to report the incident to Mr. Torres until that date because he had been on vacation at the time of the incident in question. (11) On April 10, 2000, the date that Plaintiff

1

informed Robert Torres of her termination, she also informed him for the first time of the allegedly unlawful physical contact by Albert Chavez. (12) On that date, Plaintiff was informed that she could transfer to another Walgreens store, which she did, resulting in her relocation to the Walgreens at the Snowheights location on April 13, 2000. (13) On May 9, 2000, Plaintiff was given a verbal warning by her manager at her new store.
(14) On June 19, 2000, Plaintiff's position is that she voluntarily abandoned her employment with Walgreens.

Defendant contends that Plaintiff has not, in her complaint or in her testimony, identified any policy or representation that would lead her to rely on any provisions of an implied contract. Additionally, referring to Plaintiff's deposition, Defendant points out that Plaintiff did not know whether she had received a copy of the Walgreens employee handbook on which she now seeks to rely, and she can not recall seeing any posted documents regarding employee complaints, and the only provisions of the Walgreen Personnel Policy Manual she professed having any familiarity with was the "dress code". Defendant argues that the only support of the general allegations in Count IV (Breach of Contract) of the Complaint is the argument of Plaintiff's counsel. Defendant also points out the specific disclaimers in the policy manual which are intended to preserve the "employment at will" concept and to disavow any intent to make "progressive discipline" an employee contract right.

**Plaintiff's Contentions.**

Plaintiff would dispute Defendant's "undisputed facts" numbered 4, 5, 6, 7, 8, 9, 10, 11, and 12. Plaintiff disputes numbers 4 and 7 indicating that she was not late on each occasion documented in Defendant's records, and she disputes that she was "continually tardy". She disputes No. 5 insofar as it indicates that she received a copy of the written warning. Plaintiff does not recall the meeting with Chavez referred to in No. 6. Regarding "undisputed fact" No. 8, Plaintiff contends that by calling in to report that she was giving another employee a ride to work that she should not be considered "late", even though she arrived at the store 15 minutes after her designated starting time. Plaintiff disputes "undisputed fact" No. 9 contending that her employment was terminated rather than that she was

2

"temporarily suspended". With respect to "undisputed facts" 10 and 11, Plaintiff contends that she tried to make a complaint soon after Assistant Manager Albert Chavez kicked her in the crotch. Plaintiff states that she was told that no complaint forms were available. After that Plaintiff neglected to take action. Plaintiff also disputes Defendant's fact No. 12 stating that she was not told that she could transfer to another store; instead, she was told that she could try to find work at another store that would accept her.

**Standard for Summary Judgment.**

A motion for summary judgment should be granted only when there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. See Fed. R. Civ. P. 56(c). A court's job in ruling on a motion for summary judgment is not to weigh the evidence, make credibility determinations, or draw inferences from the facts, but, rather, to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 255 (1986). The inquiry a court must make is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. If a court finds that there are genuine and material factual issues, these issues should be resolved by the fact finder, and summary judgment is precluded. See id. at 248.

**Discussion.**

A number of the factual disputes to which Plaintiff points do not directly address the principal argument raised by Defendant in the instant motion. If there were an implied contract which dealt with the matter set out in the facts as disputed or undisputed or modified, then the other matters must be considered; otherwise, the implied contract claim must fail. On the question of the existence of an

3

implied contract, Plaintiff has testified that the only portion of the Walgreens Personnel Policy Manual she was familiar with was the "dress code." There is no suggestion that the "dress code" has anything to do with this law suit. Plaintiff knew of the requirement that she call the store when she was going to be late. She had the "understanding" that if she complied with the requirement to call in, the late arrival at work would be excused. She makes no claim that any written policy or practice existed which made the mere act of calling to give notice of a late arrival turned any tardiness into an excused tardiness. In order for Plaintiff to have a claim under an implied contract incorporating the Personnel Policy Manual, she must show that she was aware of the provisions of the Personnel Policy Manual and that she relied on them. Bayliss v. Contel Federal Systems, Inc., 930 F.2d 32, (10th Cir. 1991), 1991 WL 47111 * 5[1]. Plaintiff has failed to do this in her testimony, and the absence of awareness of the provisions as well as the lack of reliance which presumably would follow such ignorance, may keep Plaintiff from being able to rely on the provisions of the manual. Nevertheless, Plaintiff was given certain directions by her supervisors and she complied with the requirement that she telephone the store when she was going to be late for work. When she responded to a notice of suspension in November of 1999, she stated, "I feel that some of the days I was late were excused because I called ahead of time". (Exhibit 2 to Plaintiff's Response to Defendant's Motion for Summary Judgment.) Defendant makes no showing that Plaintiff was ever corrected if this were wrong. Plaintiff's assertion that she had such an understanding may be difficult to accept as being reasonable; but I am unwilling on a summary judgment motion to say that Plaintiff's understanding was not objectively "reasonable" and that Defendant is thereby entitled to a summary judgment; particularly, when no apparent steps were taken

---

[1] As Defendant points out, Bayliss is an unpublished decision which under 10th Cir.R.36.3 "may be cited if it has persuasive value with respect to a material issue which has not been addressed in a published opinion and it would assist the court in its disposition".

to correct or refute Plaintiff's misapprehension, if there were one.  Plaintiff's "understanding" about her being late taken with the other circumstances of her employment (including her being kicked by the assistant manager, her being summarily fired by the assistant manager, her being told that there were no complaint forms on which she could report the kicking, and her later being told by her manager it was too late to file a complaint about the "kicking"), present questions of fact for the jury concerning Plaintiff's "'reasonable expectations" based on "norms of conduct" and employer representations and this precludes summary judgment. <u>Keidrowski v. Citizens Bank</u>, 119 N.M. 572, 575; 893 P.2d 468, 471 ( Ct. App. 1995).  If the jury were to find an implied contract then the question of whether Defendant breached its implied covenant of good faith and fair dealing is also a factual matter for the jury.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, of the Claims of Breach of Implied Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing (Docket # 37) be, and it is hereby, **DENIED.**

_____
UNITED STATES MAGISTRATE JUDGE